# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

STEPHANIE M. DESSELLE, )
)
PLAINTIFF, ) Case No.: 2:19-CV-00338
)
V. )
) **JURY TRIAL DEMANDED**
IVY CREEK HEALTHCARE LLC, )
D/B/A PHYSICAL EXPRESS LLC, )
)
DEFENDANT(S). )

## COMPLAINT

### I.   JURISDICTION

1. This suit is authorized and instituted under the Employee Retirement Income Security Act of 1974, 29. U.S.C. §§ 1001, et seq., (ERISA).

2. This suit is authorized and instituted under the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-69 et seq., (COBRA).

### II.   PARTIES

3. Plaintiff, Stephanie M. Desselle, ("Plaintiff" or "Desselle") is a resident of Elmore, Elmore County, Alabama, and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Northern Division.

4. Defendant Ivy Creek Healthcare LLC d/b/a Physical Express LLC ("Defendant") is a company registered and doing business in the State of Alabama

and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

## III. FACTS

5. Desselle incorporates by reference and realleges each of the preceding paragraphs as if fully set out herein.

6. Desselle began working for Physical Express on or about January 6, 2014 under Dr. Steven Allen.

7. In October of 2016, Desselle started nursing school.

8. At that time, Desselle entered a contract with Physical Express where Physical Express paid for a percentage of Desselle's tuition based on her grades.

9. In exchange for tuition payments, Desselle was obligated to work for Physical Express for four (4) years after graduation.

10. In August of 2016, Dr. Allen sold Physical Express to Ivy Creek.

11. In April of 2018, Office Manager, Sarah Chandler, offered Desselle a raise for her work and years of dedication to the company.

12. Approximately four weeks later Defendant experienced a significant decline in patients.

13. In May, Desselle followed-up with Chandler about the raise that she was offered.

14. Chandler provided Desselle with the paperwork necessary for the raise.

15. That same week, Desselle received her first write-up during her employment with Defendant.

16. Defendant continued to experience a decline in patient numbers.

17. In June, Defendant terminated three (3) employees.

18. In July, Defendant terminated two (2) additional employees.

19. Desselle's son had a long-standing heart condition.

20. In July, Desselle learned that her son would need life-saving heart surgery.

21. Desselle's son's surgery was scheduled for August 21, 2018, at Children's Hospital.

22. Desselle spoke with Chandler and others at work about her son's condition and need for surgery.

23. On July 31, 2018, a meeting was held between Chandler, Head Nurse, Tiffany Mims, Owner Mike and his wife Tanya Bruce about cutting costs.

24. On August 1, 2018, Desselle worked a full shift from 7:30 a.m. until 6:00 p.m.

25. After Desselle's shift, she was called into a meeting with Chandler and Mims.

26. During the meeting, Desselle was provided a write-up and kept at the office for two-hours to discuss the write-up.

27. Before allowing Desselle to leave, Chandler requested Desselle's badge and terminated her employment.

28. On August 6, 2018, Desselle sent a text message to Chandler asking how long her health insurance would be active.

29. Desselle received no response from Chandler.

30. On August 7, 2018, Desselle sent a text message to Tanya Bruce inquiring how long her insurance would be active.

31. Desselle received no response from Tanya Bruce.

32. On or about August 16, 2018, Children's Hospital called and informed Desselle that the insurance was cancelled on July 31, 2018.

33. On August 21, 2018, Desselle sent a text to Chandler and again asked about continued insurance coverage information.

34. Chandler directed her to speak with Tanya Bruce.

35. Desselle informed Chandler she had emailed Tanya Bruce and did not receive a response.

36. On August 28, 2018, Desselle emailed Mike Bruce inquiring where she could obtain COBRA information.

37. On or about August 30, 2018, Desselle received COBRA documentation.

38. On August 31, 2018, Desselle express mailed the completed COBRA documentation and payment.

39. Desselle's son's heart surgery was rescheduled for September 25, 2018.

40. On or about September 6, 2018, Children's Hospital contacted Desselle and informed her that COBRA insurance was not active.

41. Desselle called the COBRA office and was informed that the payment was received but Defendant had not processed the request.

42. Defendant is self-insured.

43. On September 7, 2018, Desselle received an email from Tanya Bruce asking for proof of guardianship of her son.

44. Subsequently, the COBRA representative stated that Defendant denied coverage for the policy.

## IV. COUNT ONE – ERISA INTERFERENCE

45. Desselle incorporates each fact and allegation contained in the foregoing paragraphs as though fully restated herein.

46. Defendant employed Desselle as a medical assistant.

47. Desselle was qualified for the position of medical assistant.

48. Defendant provided medical insurance for its employees.

49. Defendant is self-insured.

50. Defendant deducted money from Desselle's paycheck that was paid toward her insurance policy.

51. Desselle's son needed life-saving heart surgery, which was scheduled for August 21, 2018.

52. Defendant terminated Desselle's health insurance policy on July 31, 2018.

53. Defendant then terminated Desselle's employment on August 1, 2018.

54. Defendant offered Desselle a raise in April of 2018 because of her performance and dedication to Defendant.

55. Defendant was aware of Desselle's son's health condition and upcoming surgery.

56. In violation of ERISA, Defendant terminated Desselle's employment to prevent Desselle's use of health insurance benefits for her son.

57. Because of Defendant's violation of ERISA, Desselle has been damaged, suffering loss of pay, loss of benefits, and mental anguish.

## V. COUNT TWO – ERISA RETALIATION

58. Desselle hereby incorporates each fact and allegation contained in the foregoing paragraphs as though fully restated herein.

59. Defendant employed Desselle as a medical assistant.

60. Desselle was qualified for the position of medical assistant.

61. Defendant provided medical insurance for its employees.

62. Defendant is self-insured.

63. Defendant deducted money from Desselle's paycheck that was paid toward her insurance policy.

64. Desselle's son needed life-saving heart surgery, which was scheduled for August 21, 2018.

65. Defendant terminated Desselle's health insurance policy on July 31, 2018.

66. Defendant then terminated Desselle's employment on August 1, 2018.

67. Defendant offered Desselle a raise in April of 2018 because of her performance and dedication to Defendant.

68. Defendant was aware of Desselle's son's health condition and upcoming surgery.

69. In violation of ERISA, Defendant terminated Desselle's employment to prevent Desselle's use of health insurance benefits for her son.

70. Because of Defendant's violation of ERISA, Desselle has been damaged, suffering loss of pay, loss of benefits, and mental anguish.

## VI.  COUNT THREE - WRONGFUL DENIAL OF COBRA BENEFITS

71. Desselle hereby incorporates each fact and allegation contained in the foregoing paragraphs as if fully restated herein.

72. On or about August 16, 2018, Children's Hospital called and informed Desselle that the insurance was cancelled on July 31, 2018.

73. On August 21, 2018, Desselle sent a text to Chandler and again asked about continued insurance coverage information.

74. Chandler directed her to speak with Tanya Bruce.

75. Desselle informed Chandler that she had emailed Tanya Bruce and did not receive a response.

76. On August 28, 2018, Desselle emailed Mike Bruce inquiring where she could obtain COBRA information.

77. On or about August 30, 2018, Desselle received COBRA documentation.

78. On August 31, 2018, Desselle express mailed the completed COBRA documentation and payment.

79. Desselle's son's heart surgery was rescheduled for September 25, 2018.

80. On or about September 6, 2018, Children's Hospital contacted Desselle and informed her that COBRA insurance was not active.

81. Desselle called the COBRA office and was informed that the payment was received but Defendant had not processed the request.

82. Defendant is self-insured.

83. On September 7, 2018, Desselle received an email from Tanya Bruce asking for proof of guardianship of her son.

84. Subsequently, the COBRA representative stated that Defendant denied coverage for the policy.

85. Defendant wrongfully denied Desselle's COBRA benefits.

86. Because of Defendant's COBRA violation, Desselle has been damaged.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Employee Retirement Income Security Act of 1974, as amended;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended;

C. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

D. Award her back pay, together with employment benefits, compensatory damages, punitive damages, front pay, liquidated damages; special damages; nominal damages;

E. Attorneys' fees and costs;

F. Plaintiff requests that the Court award Plaintiff equitable relief as provided by applicable law; and,

G. Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

/s/ Kira Fonteneau
Kira Fonteneau

/s/ Felicia Long
Felicia Long

**OF COUNSEL:**

The Fonteneau Firm LLC
A Member of the Five Points Law Group LLC
2151 Highland Avenue, Suite 205
Birmingham, Alabama 35205
T: 205.564.9005 F: 205.564.9006

**Please serve Defendant as follows:**

Ivy Creek Healthcare LLC
D/B/A Physical Express LLC
c/o Michael Bruce
201 Mariarden Rd
Dadeville, AL 36853