IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| STEPHANIE M. DESSELLE, )<br>    )<br>    Plaintiff, )<br>    )<br>    v.   )<br>    )<br>IVY CREEK HEALTHCARE LLC, )<br>d/b/a Physical Express )<br>LLC, )<br>    )<br>    Defendant. ) | CIVIL ACTION NO.<br>2:19cv338-MHT<br>(WO) |

## OPINION

Plaintiff Stephanie M. Desselle filed this lawsuit against her former employer defendant Ivy Creek Healthcare LLC, doing business as Physical Express LLC, charging violations under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1461.  She asserts three claims: interference with her ERISA rights, retaliation for exercising her rights, and wrongful denial of benefits. The court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1) (ERISA enforcement).

This lawsuit is before the court on Ivy Creek's motion to stay the proceedings and compel arbitration. For the reasons that follow, the court will grant the motion as to Desselle's interference and retaliation claims and deny the motion as to her denial-of-benefits claim.

## I. BACKGROUND

Ivy Creek employed Desselle as a medical assistant beginning in early 2014. Desselle alleges that, on August 1, 2018, despite being offered a raise for her "performance and dedication" to Ivy Creek a few months prior, she was terminated. Compl. (doc. no. 1) at ¶ 11. She asserts that Ivy Creek terminated her employment to prevent her from using health-insurance benefits to cover her son's scheduled heart surgery.

Desselle also claims that her former employer denied her continuing, post-termination healthcare benefits. Her allegations relevant to this claim are

2

as follows: Desselle's son was scheduled for heart surgery at Children's Hospital on August 21, 2018. Prior to that date, she twice inquired of Ivy Creek as to the status of her post-termination health insurance and received no response.  On August 16, the hospital called and informed her that her insurance was cancelled as of July 31--the day before she was terminated.  She then made two more inquiries of Ivy Creek about her post-termination insurance coverage. On August 30, she received post-termination coverage documentation and the next day she express-mailed the completed paperwork and payment.  On September 6, the hospital informed her that her insurance was still not active.  She called the insurance office and was informed that the payment was received, but that Ivy Creek, which is self-insured, had not processed the request.  Sometime later, the insurance representative told she that Ivy Creek denied coverage for the policy.

3

Desselle first executed an application for enrollment in healthcare benefits in August 2016. The application contained a clause mandating arbitration of disagreements with an exception for "a claim for benefits under section 502(a) of ERISA," which is codified at 29 U.S.C. § 1132(a).[1] Defendant's Motion to Stay Proceedings and Compel Arbitration (doc. no. 11)

---

1. The full arbitration clause reads:

> "THE GROUP PLAN UNDER WHICH YOU ARE APPLYING FOR COVERAGE INCLUDES BINDING ARBITRATION. THIS MEANS ANY DISAGREEMENT <u>OTHER THAN A CLAIM FOR BENEFITS UNDER SECTION 502(A) OF ERISA</u> WILL BE SETTLED BY ARBITRATION – NOT A COURT. THE ARBITRATOR'S DECISION IS FINAL AND BINDING. AN ARBITRATOR IS AN INDEPENDENT, NEUTRAL PARTY WHO MAKES A DECISION AFTER LISTENING TO BOTH PARTIES. THIS DECISION CAN'T BE REVIEWED BY A COURT. THE ARBITRATOR ACTS AS JUDGE AND JURY. BY SIGNING BELOW YOU AGREE TO SETTLE ANY DISAGREEMENT BY ARBITRATION INSTEAD OF A COURT TRIAL.
>
> "AGREEMENT TO ARBITRATE – AFTER READING THIS, I AGREE TO THE ARBITRATION PROVISIONS IN THE GROUP PLAN."

Defendant's Motion to Stay Proceedings and Compel Arbitration (doc. no. 11) at Ex. 1 (emphasis added).

at Ex. 1.  The parties do not dispute that the contract and this mandatory arbitration provision are enforceable.  Instead, the dispute raised by this motion turns on the scope of the arbitration agreement and whether the last of Desselle's claims, her denial-of-benefits claim, falls into the exception to the agreement.[2]

## II. DISCUSSION

### A.

As a contract involving commerce, the parties' arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16.  The Supreme Court has interpreted § 2 of the Act, which mandates enforcement of agreements to arbitrate, to reflect a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)

---

[2]. As a threshold matter, neither party argues that the issue of arbitrability of this claim is one for the arbitrator and not the court.

(quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  However, "the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), and parties may "agree to limit the issues subject to arbitration."  *AT&T Mobility* LLC, 563 U.S. at 344 (citation omitted).  Because arbitration is "a matter of contract ... courts must place arbitration agreements on an equal footing with other contracts ... and enforce them according to their terms."  *Id.* at 339 (citations omitted).

### B.

In her complaint, Desselle asserts three claims: interference, retaliation, and wrongful denial of benefits.  The first two claims are bought under the ERISA provision that makes it unlawful to "discharge ... a participant ... for exercising any right to which he is entitled under the provisions of an employee

6

benefit plan." 29 U.S.C. § 1140.  The parties agree that the interference and retaliation claims are subject to their binding arbitration agreement.

The sole issue is whether the terms of the agreement also require arbitration of Desselle's third claim, which alleges wrongful denial of benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161-1168.  Desselle asserts that this is "a claim for benefits under section 502(a) of ERISA," which, as stated, is codified at 29 U.S.C. § 1132(a), and thus is the type of disagreement explicitly excepted from the arbitration provision.

The court agrees.  First, unlike Desselle's other claims, which seek to enforce *rights* other than the payment of benefits, this claim alleges a denial of *benefits*.  Ivy Creek itself characterizes this claim as alleging that "health insurance benefits for her son's surgery were denied ...." Defendant's Brief (doc. no. 23) at ¶ 4.  The remedy Desselle seeks in this claim is

7

indeed the benefits she alleges she was wrongfully denied. *See Plaintiff's Supplemental Brief* (doc. no. 24) at 3.

Second, this claim for benefits is necessarily brought under 29 U.S.C. § 1132(a). While Ivy Creek is correct that Desselle seeks benefits allegedly due under COBRA, 29 U.S.C. § 1161, it mistakenly attempts to distinguish this claim from a claim for ERISA benefits. COBRA is an amendment to ERISA that extends the right to health insurance coverage to individuals who have lost their employment-based status; it provides of "continuation coverage" under an ERISA plan. 29 U.S.C. § 1161(a).[3] 29 U.S.C. § 1132(a)(1)(B) provides a cause of action as the enforcement mechanism for *all* rights to benefits under an individual's

---

3. Under COBRA, "[t]he plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a).

8

ERISA-protected insurance plan. This provision does not distinguish between claims to recover benefits wrongfully denied during a plaintiff's employment and those denied after termination. *See, e.g. Lawrence v. Jackson Mack Sales, Inc.*, 837 F.Supp. 771, 786 (S.D. Miss. 1992) (Lee, J.) (where plaintiff alleged denial of COBRA benefits, "to the extent that plaintiff seeks to recover the benefits and coverage which she would have received had defendants complied with their statutory duties, § 1132(a)(1)(B) provides a basis for her recovery."), *aff'd*, 42 F.3d 642 (5th Cir. 1994) (table).

Thus, "a claim for benefits under section 502(a) of ERISA" is precisely the type of claim Desselle brings. *See* Defendant's Motion to Stay Proceedings and Compel Arbitration (doc. no. 11) at Ex. 1. The court therefore finds that this claim is expressly excepted from the parties' arbitration agreement.

9

C.

Even if the arbitration agreement were ambiguous, the court would be compelled by long-standing principles of contract interpretation to find Desselle's third claim outside the agreement's scope. When interpreting arbitration agreements, courts must apply general contract principles. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). These principles include "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *see also DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 470 (2015) (acknowledging role of "antidrafter" canon in interpreting arbitration clause, but declining to apply it to an unambiguous agreement).

Here, Ivy Creek drafted the contract and provided it to Desselle without opportunity for negotiation. In fact, Desselle's enrollment in health insurance was conditioned on acceptance of the arbitration clause in the application for benefits. *See* Defendant's Motion to Stay Proceedings and Compel Arbitration (doc. no. 11) at Ex. 1 *(*"THE GROUP PLAN UNDER WHICH YOU ARE APPLYING FOR COVERAGE INCLUDES BINDING ARBITRATION."). Thus, the court must construe the parties' agreement, a contract of adhesion, against Ivy Creek. *See Castleberry v. Goldome Credit Corp.*, 418 F.3d 1267, 1271 (11th Cir. 2005) (applying the anti-drafter canon to insurance contracts which "are certainly not ordinary contracts, and should not be interpreted or construed as individually bargained for, fully negotiated agreements, but should be treated as contracts of adhesion between unequal parties.") (quoting 16 Richard A. Lord, *Williston on Contracts* § 49.15 at 90 (4th ed.2000)) (internal quotation marks

11

omitted); *see also Palmer v. Infosys Technologies Ltd. Inc.*, 832 F.Supp.2d 1341, 1345 (M.D. Ala. 2011) (Thompson, J.) (describing an arbitration agreement as adhesive where "[t]he arbitration provisions, included within a larger employment contract, are boilerplate and drafted by the party with superior bargaining power, the employer.").

Accordingly, even if the agreement were ambiguous, the result would be the same: that Desselle's claim of wrongful denial of COBRA benefits is excepted from arbitration.

\*\*\*

The court finds that Desselle's interference and retaliation claims are subject to mandatory arbitration, but that her claim for benefits is not. Accordingly, the court will grant Ivy Creek's motion to compel arbitration in part and deny it in part. This

case will proceed in this court on her denial-of-benefits in claim.

An appropriate order will be entered.

DONE, this the 2nd day of December, 2019.

                                                     /s/ Myron H. Thompson
                                            **UNITED STATES DISTRICT JUDGE**